IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRANDON MICHAEL WAGES, #A6092237,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>LIEUTENANT COX, *et al.*,<br><br>　　　　Defendants. | Civil No. 24-00223 MWJS-WRP<br><br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND |

### ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND

Before the Court is a complaint filed under 42 U.S.C. § 1983 by pro se Plaintiff Brandon Michael Wages, who is a prisoner in a state facility.[1] ECF No. 1. In the complaint, Wages alleges that he was denied adequate medical care after another inmate head-butted him at the Waiawa Correctional Facility (WCF). *Id.* at PageID.5. Wages further alleges that, during a disciplinary proceeding, he was denied due process by the presiding officer, Lieutenant Cox. *Id.* at PageID.6-7.

Because Wages proceeds in forma pauperis, *see* ECF No. 4, the Court is required to screen his complaint, *see* 28 U.S.C. §§ 1915(e)(2), 1915A. For the

---

[1] Wages is currently incarcerated at Halawa Correctional Facility. *See* ECF No. 1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number," enter "A6092237," and select "Search") (last visited August 13, 2024).

reasons discussed below, the Court DISMISSES the complaint with leave to amend.  If Wages wants this action to proceed, he must file an amended complaint that cures the noted deficiencies in his claims on or before September 13, 2024.  Alternatively, Wages may inform the Court in writing on or before September 13, 2024, that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## **BACKGROUND**

Wages' complaint alleges two separate—and not obviously related—incidents.[2]

The first occurred on the evening of April 13, 2024, when an inmate at WCF head-butted Wages.  ECF No. 1, at PageID.5.  Because no medical staff was on site at the time of the incident, Wages alleges that he should have been taken to a hospital.  *Id.*  Instead, unidentified prison officials moved Wages to administrative segregation.  *Id.*  The next morning, Wages went to WCF's medical unit and was evaluated.  *Id.*

The complaint separately alleges that on an unspecified date, Lieutenant Cox presided over an adjustment hearing for Wages.  *Id.* at PageID.7.  According to

---

[2]   Wages' factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Wages, Lieutenant Cox relied exclusively on adverse witness statements in finding that Wages had pushed another inmate. *Id.* Wages was not allowed to confront or cross-examine the witnesses during the hearing. *Id.* at PageID.6. Ultimately, he was found guilty of misconduct. *Id.* And consequently, Wages was moved to a medium-security facility, he was removed from programming, and his custody status was elevated to "close custody." *Id.*

Wages commenced this lawsuit on May 21, 2024. *Id.* at PageID.8-9. He sues Lieutenant Cox and two Doe defendants, Sergeant John Doe #1 and Captain John Doe #2,[3] in both their official and individual capacities. *Id.* at PageID.1-2. Count I alleges that Wages was denied adequate medical care because he was not sent to the hospital on April 13, 2024. *Id.* at PageID.5. Count II alleges that Lieutenant Cox denied Wages due process because Wages was not allowed to confront or cross-examine adverse witnesses during his adjustment hearing. *Id.* at PageID.6. Finally, Count III alleges that Lieutenant Cox relied on adverse witness statements and did not apply the correct standard of proof during his adjustment hearing. *Id.* at PageID.7. Wages seeks injunctive relief in the form of an expunged record, a new adjustment hearing, and a recognition that his constitutional rights were violated. *Id.* at PageID.8.

---

[3]   Although named as defendants, Sergeant John Doe #1 and Captain John Doe #2 are not referred to in any of the complaint's three counts. *See* ECF No. 1.

The Court granted Wages' in forma pauperis application on July 17, 2024. ECF No. 7.

## DISCUSSION

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. *See, e.g.*, *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Complaints that, among other things, fail to state a claim for relief or seek damages from defendants who are immune from suit must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Court must grant leave to amend if it appears that the

4

plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130; Fed. R. Civ. P. 15(a)(2). When a claim cannot be saved by amendment, however, dismissal without leave to amend is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### A.     Threshold Matters

Before assessing whether Wages' complaint states a claim, the Court addresses two threshold matters: sovereign immunity and joinder.

1. Sovereign immunity limits the possible avenues of relief. Specifically, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). The Eleventh Amendment does not bar suits for damages against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Nor does it bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law. *See Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

On the face of his complaint, Wages does not appear to seek money damages. But if he does, such claims may only proceed if they are asserted against Defendants in their *individual* capacities, not their *official* capacities.

5

Wages does seek injunctive relief. To the extent any claims for injunctive relief are asserted against Defendants in their official capacities and are based on an alleged ongoing violation of federal law, those claims may proceed. But to the extent that Wages seeks injunctive relief from Defendants based on medical care he experienced at WCF, those claims are DISMISSED as moot because Wages is now incarcerated at Halawa Correctional Facility and, therefore, is "no longer . . . subjected to the allegedly unconstitutional policy." *See Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) (cleaned up).

2.  The complaint faces another threshold hurdle: it appears to bring claims about two separate incidents that may not be related. Count I alleges that, after being head-butted, Wages was denied adequate medical care because he was not immediately sent to the hospital. *Id.* at PageID.5. Counts II and III allege that Wages' due process rights were violated during a disciplinary proceeding. *Id.* at PageID.6-7.

Against a single defendant, a party may bring as many claims as it has against that opposing party. Fed. R. Civ. P. 18(a). "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties." *Weeks v. Espinda*, No. 10-00305, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows multiple defendants to be joined in one action only if (1) any right to relief is asserted against them jointly, severally, or with

respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A), (B). "Unrelated claims involving different defendants belong in different suits." *What v. Honolulu Police Dep't*, No. 13-00373, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

Here, it appears that Counts II and III are based on the actions of Lieutenant Cox during a disciplinary proceeding. *See* ECF No. 1, at PageID.6-7. Count I alleges that Wages was head-butted in the face and denied adequate medical care on April 13, 2024, *id.* at PageID.5, but it does not identify any connection between this claim and Counts II and III. For example, the complaint does not allege that Lieutenant Cox participated in the events of April 13, or that the adjustment hearing was based on the events of that day. To be sure, it is possible that the events are connected; the complaint alleges that the adjustment hearing found Wages guilty of "pushing" a fellow inmate, *see id.* at PageID.7, which could have occurred during the same incident as the alleged head-butting. But the complaint does not clearly make this connection, and the fact that all three claims are based on events that occurred at WCF, without more, is not enough to join them in the same action. *See Woods v. Curry*, No. C 10-1859, 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison").

If Wages decides to file an amended complaint (which, as discussed below, he will be allowed to), he should make clear the connection between different claims. Wages may state several claims against a single defendant. Fed. R. Civ. P. 18. He may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). But Wages may not pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, No. 18-00345, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

B.   **Failure to State a Claim**

Even setting aside these threshold matters, Wages' complaint also fails to state a claim. The complaint invokes 42 U.S.C. § 1983, which "provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (alteration in original) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege (1) a violation of a federally protected right and (2) that the alleged violation was committed by a

8

person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

  1.  The complaint sues two Doe defendants, a sergeant and a captain at WCF.  ECF No. 1, at PageID.2.  But because the complaint does not allege facts about either defendant, it fails to state a claim against them.

  Doe defendants are generally disfavored because it is effectively impossible for the United States Marshals to serve an anonymous defendant.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Sometimes, however, a plaintiff cannot know the names of all defendants prior to bringing suit.  In such instances, a plaintiff may refer to unknown defendants as John or Jane Doe, alleging specific facts showing how each Doe defendant violated his rights.  The plaintiff may then use the discovery process to obtain the names of Doe defendants and, once they are identified, seek leave to amend to name those defendants.  But a plaintiff may not use "Doe" placeholders if it is clear that discovery will not uncover their identities, or that the complaint will be dismissed on other grounds.  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

  Although Wages names as defendants Sergeant John Doe #1 and Captain John Doe #2, *see* ECF No. 1, at PageID.2, he fails to allege how either officer violated his rights under federal law.  Unless Wages does so, any claims against these Doe defendants cannot proceed.  *See Conklin v. Espinda*, Civ. No. 19-00097,

2019 WL 2397802, at *6 (D. Haw. June 6, 2019) (dismissing claims against unknown defendants where plaintiff failed to explain how each Doe defendant personally violated plaintiff's civil rights).

Moreover, the fact that the Doe defendants are supervisory prison officials does not make them liable for their subordinates' conduct. Indeed, a supervisor generally cannot be held vicariously liable for the conduct of his subordinates under § 1983. *See Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020). Because of this general rule, a supervisory official may only be held liable under § 1983 if a plaintiff alleges "(1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted).

Here, Wages does not say how the unnamed sergeant and captain allegedly violated his rights. In fact, neither supervisory officer is mentioned in any of the complaint's three counts. And the mere fact that the defendants may have

supervised an alleged wrongdoer is insufficient to state a claim against a prison official.  *See DePaepe v. White*, No. 20-00198, 2020 WL 3472907, at *4 (D. Haw. June 24, 2020) ("Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of vicarious liability . . . .").

2.  Wages alleges in Count I that he was denied adequate medical care because he was not taken to the hospital after he was head-butted on April 13, 2024.  ECF No. 1, at PageID.5.  Even if the complaint named a defendant who was responsible for the medical care he received, it fails to allege facts sufficient for a claim of inadequate medical care.

The Eighth Amendment, which forbids "cruel and unusual punishment," U.S. Const. amend. VIII, governs the medical treatment of prisoners.  *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "does not mandate comfortable prisons," it also does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted).  Prison officials, therefore, "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must take reasonable measures to guarantee the safety of the inmates."  *Id.* (internal quotation marks omitted).

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately

indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019) (per curiam) (internal quotation marks omitted).  A serious medical need can involve "physical, dental[,] and mental health," and is present when the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (cleaned up).  Deliberate indifference is demonstrated when a plaintiff shows that "the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (cleaned up).  This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment.  In other words, medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Edmo*, 935 F.3d at 786 (cleaned up).

At this point, although Wages alleges that he was head-butted, he has not identified a serious medical need.  For example, he does not describe the nature of his injury or its severity.  In addition, Wages has not plausibly alleged that any prison official was deliberately indifferent to a serious medical need.  Wages does not say with whom he spoke about his injury or injuries, what he said to that

person, or how that person responded. Without additional detail, Count I is DISMISSED.

3. Wages alleges in Counts II and III that his due process rights were violated during a disciplinary hearing. ECF No. 1, at PageID.6-7. According to Wages, he was not allowed to cross-examine adverse witnesses, the committee improperly relied on adverse witness statements, and the committee applied the wrong standard of review. *Id.* The complaint's allegations, however, do not support a claim for a violation of due process.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. These protections extend to prisoners, who are "entitled to certain due process protections when subject to disciplinary sanctions." *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). To state a procedural due process claim, a prisoner must (1) identify a protected liberty or property interest, (2) allege that the government deprived the prisoner of that interest, and (3) allege a lack of process. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000). Critically, the absence of a procedure *alone* is insufficient to state a claim—a plaintiff must *also* allege that he was deprived of a protected interest.

In the prison context, these protected interests typically "pertain[] to liberty," not property. *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1075 (S.D. Cal. 2007).

13

And protected liberty interests may arise under either the federal Due Process Clause or state law.  *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976).  The federal Due Process Clause is implicated when a prisoner faces a change in conditions so severe as to affect the sentence imposed in an unexpected manner.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer from prison to mental hospital triggers the Due Process Clause); *Washington v. Harper*, 494 U.S. 210, 221 (1990) ("unwanted administration of antipsychotic drugs" implicates the Due Process Clause).  Less severe changes in confinement can also trigger due process protections, so long as the prisoner faces an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *Brown*, 751 F.3d at 987 (describing factors that bear on whether a prisoner faces an atypical and significant hardship).

Wages' complaint does not identify a protected liberty interest under either the U.S. Constitution or state law.  At one point, the complaint alleges that Wages was moved to administrative segregation, *see* ECF No. 1, at PageID.5, but "[t]ypically, administrative segregation in and of itself does not implicate a protected liberty interest," *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  The complaint also alleges that Wages was transferred to a medium security facility, that he was removed from programming, and that his custody

14

level increased. ECF No. 1, at PageID.6. But none of these necessarily amount to a protected liberty interest. *See Meachum*, 427 U.S. at 225 ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (rejecting inmate's argument that classification status and eligibility for programming constituted protected liberty interests).

Even assuming Wages identified a protected liberty interest that he was deprived of, he fails to allege a lack of sufficient process. When a prisoner faces disciplinary charges that could lead to a deprivation of liberty interests, the prisoner is entitled to certain procedural protections, including (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) assistance where the charges are complex or the inmate is illiterate. *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

Wages' complaint does not allege that he was denied any of these protections. The complaint instead asserts that Wages was unable to confront or cross-examine adverse witnesses. ECF No. 1, at PageID.6. But the Supreme

Court has concluded that inmates are not necessarily entitled to confront or cross-examine witnesses.  *Wolff*, 418 U.S. at 567-68.  The complaint additionally asserts that the weight of the evidence was insufficient.  ECF No. 1, at PageID.7.  Yet in reviewing disciplinary decisions of prison officials, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board."  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).  The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.  Wages appears to acknowledge that adverse witness statements supported the decision against him.  ECF No. 1, at PageID.7.

For the foregoing reasons, the complaint does not state a claim under the Due Process Clause, and Counts II and III are DISMISSED.

      **C.**    **Leave to Amend the Complaint**

The Court recognizes that Wages is proceeding pro se, and amendment could cure the identified deficiencies.  Accordingly, the Court DISMISSES the complaint and GRANTS Wages leave to amend.  Wages must file any amended complaint on or before September 13, 2024.  Wages may not expand his claims beyond those already alleged herein, nor may he add new claims without

explaining how those new claims relate to his existing claims. Claims that do not properly relate to those in the complaint are subject to dismissal.

Wages must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaiʻi. Of note, Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading, and Local Rule 99.2(a) requires the complaint be submitted on the Court's prisoner civil rights form.

If Wages fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If, however, Wages decides to voluntarily dismiss this action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, and does so on or before September 13, 2024, such dismissal will not count as a strike against him.

//

//

//

## **CONCLUSION**

(1) The complaint, ECF No. 1, is DISMISSED without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Wages must file any amended complaint on or before September 13, 2024, and it should address the deficiencies identified above.

(3) Failure to timely file an amended complaint may result in the automatic dismissal of this suit without further notice, and Wages may incur a strike under 28 U.S.C. § 1915(g).

(4) Alternatively, Wages may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1) on or before September 13, 2024, and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Wages a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended complaint.

IT IS SO ORDERED.

DATED: August 13, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 24-00223 MWJS-WRP; *Brandon Michael Wages v. Lieutenant Cox,* et al.; ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND